## COMMERCIAL SECURITY BANK OF OGDEN v. CHIMES PRESS

(ZION'S SAVINGS BANK & TRUST CO., Intervener).

No. 5464.  Decided March 30, 1935.  (42 P. [2d] 990.)

Petition for rehearing denied November 23, 1935.

*Thomas & Thomas,* of Salt Lake City, for appellant.

*DeVine, Howell & Stine,* of Ogden, for respondent.

FOLLAND, Justice.

This appeal involves a contest of priority between respondent's (plaintiff's) chattel mortgage and appellant's (intervener's) attachment and execution levy on personal property of Chimes Press (defendant). The plaintiff, Commercial Security Bank, hereinafter referred to as respondent, brought suit against Chimes Press to foreclose a chattel mortgage on certain personal property of the defendant. Zion's Savings Bank & Trust Company, hereinafter referred to as appellant, filed a complaint in intervention to which respondent filed a demurrer. The demurrer was sustained, and, appellant electing to stand on its complaint in intervention, the complaint was dismissed. From the judgment

of dismissal, this appeal was taken and the court's action in sustaining the demurrer assigned as error.

The complaint in intervention alleged in substance that appellant commenced suit on a promissory note in the district court of Salt Lake county on March 14, 1933, against the Chimes Press and attached its personal property in Weber county on the same day; that after judgment was obtained in the attachment action it caused execution to be levied on the same property on March 4, 1933; that the respondent claims an interest in the attached property of the Chimes Press by reason of a chattel mortgage filed for record January 13, 1930; that thereafter more than three years elapsed and respondent did not within thirty days thereafter, or at all, take possession of the mortgaged property nor file any affidavit exhibiting its interest as mortgagee, and for that reason respondent's mortgage became and was, and now is, wholly void and subject to the lien of appellant's attachment and execution. To this complaint respondent filed a general demurrer and also alleged that it appeared from the complaint in intervention that the debt of defendant to appellant was contracted after respondent's mortgage was filed and before the expiration of three years from filing and while the mortgage was in full force and effect, and that it did not appear that appellant has been misled or in any way induced to change its position to its prejudice by failure to file an affidavit extending the lien of the mortgage.

It appears from the files in the case that the suit for foreclosure was commenced within the thirty-day period following three years after the filing of the mortgage, and hence suit was commenced at a time when the mortgage was in full force and effect. While there is no direct allegation in the complaint of the time when appellant extended credit to the Chimes Press, the inference is reasonably clear, and is not disputed, that the debt was incurred after filing of the mortgage and before the three-year period of its validity had expired.

The arguments in briefs before the court were directed to the question of whether or not appellant, within the meaning and purview of Comp. Laws Utah 1917, § 474, was a creditor as to whom respondent's mortgage was void because of failure to file renewal affidavit as provided therein. That section is as follows:

"Every mortgage so filed shall be void as against the creditors of the person making the same, or against subsequent purchasers or mortgagees in good faith, after the expiration of three years after the filing thereof; unless within thirty days after the expiration of the term of three years from such filing and within thirty days after the expiration of each year thereafter, the mortgagee, his agent or attorney, shall make an affidavit exhibiting the interest of the mortgagee in the property at the time last aforesaid claimed by virtue of such mortgage, and if such mortgage is to secure the payment of money the amount yet due and unpaid, and shall file the same with the county recorder, to be attached to the instrument or copy on file, to which it relates; provided, that no mortgage of personal property shall be valid as against creditors of the mortgagor or subsequent purchasers or mortgagees in good faith after the expiration of the five years from the date of the original filing."

We shall hereinafter use the word "refiling" when referring to the filing of the renewal affidavit exhibiting the mortgagee's interest within the thirty-day period following three years from the date of filing, and use the word "filing" when it is intended to refer to the original filing of the mortgage. Appellant's contention is that, having caused an attachment and execution levy on the property in question after expiration of the time for refiling, there having been no refiling whatever, and notwithstanding the mortgage was in fact not paid and was still valid between the parties, it secured a lien superior to that claimed by the mortgagee, the mortgage by statute having become void as to such creditor.

Respondent, on the other hand, contends that since the appellant extended credit to the defendant while the mortgage was on file, thus with constructive notice thereof, and

was not misled or in anywise prejudiced by failure of respondent to refile, nor had it changed its position to its injury because of such failure to refile, its lien by attachment dated back to the time the debt was incurred, and that the debt continued subordinate to the lien of the mortgage. The rule contended for is in the nature of an estoppel based on the theory that the purpose of the statute was to protect persons dealing with the debtor against secret liens.

It is conceded by appellant that not all creditors can take advantage of respondent's failure to file the renewal affidavit, but only creditors who, by legal process and levy, fix their liens on the property of the debtor, and that as to such creditors the mortgage is void because ■ made so by express provision of the statute. The rule prevails that a mere general creditor who has not some right to or interest in or lien on the specific property is not in a position to attack a mortgage for any defect therein or for failure to file or to refile. 5 R. C. L. 414. One to whom a mortgagor owes a debt may not for that reason alone make the contest, but he must place himself in a position to contest such mortgage for defect or failure to file or refile by arming himself with process pursuant to which his debt has been affixed on the property by levy. 1 Jones Chattel Mortgages and Conditional Sales, Bowers Ed., 419; *Graham* v. *Perry*, 200 Wis. 211, 228 N. W. 135, 68 A. L. R. 267; *Fred C. Silverthorn & Sons* v. *Pacific Finance Corp.*, 133 Cal. App. 163, 23 P. (2d) 798.

This court has recognized the same rule in *Hansen* v. *Daniels*, 73 Utah 142, 272 P. 941, 946, wherein the court said:

"We are satisfied, however, that in the absence of fraud or superior equities on behalf of a creditor the claim of a mortgagee in an unrecorded mortgage, or as in this case, a vendor in a conditional sale agreement, is superior to the right of a general creditor who has not acquired a lien by attachment or otherwise prior to the recording of such mortgage or agreement of conditional sale."

Undoubtedly appellant is a creditor of Chimes Press and by attachment and execution its debt has been fastened on the specific property of the debtor covered by respondent's mortgage. It is thereby in a position to contest the validity or priority of the mortgage. It does not necessarily follow that because appellant has placed itself in a position to contest the validity and priority of its own claim with respect to that of respondent's mortgage that it also is entitled to have its execution lien preferred before that of the mortgage. As a matter of procedure it is entitled to raise the question as it has done by its complaint in intervention. That leaves for decision the question of whether, as a matter of law under the facts stated, the attachment lien is now prior and superior to that of the mortgage.

The purpose of the filing statute has been stated, and we think correctly, by this court in *Volker Lumber Co.* v. *Utah & Oregon Lumber Co.*, 45 Utah 603, 148 P. 365, 367, Ann. Cas. 1917D, 1158, as follows:

"Now, it is universally held by the courts, and such clearly is the purpose of the statute, that, under a statute like ours, filing, if it is required, or recording, where that is necessary, in law is the equivalent of taking possession by the mortgage, and hence the statute is construed to mean that the mortgage is invalid as against the class of persons aforesaid only so long as it is not filed or recorded, unless it is withheld from record so long that fraud may be inferred from the delay. When it is filed or recorded, however, it is the same, in legal effect, as though possession were taken, and the mortgage is valid as against all who become creditors of the mortgagor after such filing or recording, unless it can be declared invalid upon the ground of fraud or for some reason other than that it was not filed or recorded."

It would follow that a refiling is required for a cognate purpose. If the filing of the mortgage is of the same legal effect as the taking of possession by the mortgagee, and is in lieu thereof, then it must be that failure to refile within the stautory time would have the same legal effect as if the

property were returned by the mortgagee to the possession of the mortgagor. Failure to refile would give notice to the world that the mortgage is no longer a valid and subsisting lien on the property described therein, or, to use the statutory language, the mortgage is void as to creditors. We think that cannot mean anything other than as to creditors, whether prior or subsequent, the property is now freed from the mortgage lien. Credit may then be extended to the owner on the theory that the property is free from the mortgage lien, or the property may be levied upon by any creditor, either prior or subsequent, on the theory that the property is no longer subject to the mortgage. Creditors, as used in the statute, would include creditors who become such during the period of original filing. 11 C. J. 545; *First Nat. Bank of Rock Springs* v. *Ludvigsen*, 8 Wyo. 230, 56 P. 994, 57 P. 934, 80 Am. St. Rep. 928; *First Nat. Bank* v. *Magner*, 47 S. D. 80, 195 N. W. 1020. If the property had been taken into possession by a mortgagee and later, upon payment of the mortgaged debt, its possession had been returned, or, upon payment of the mortgaged debt after filing, any creditor armed with process would have a right to attach the property or to sell it under execution. The purpose of section 474 is to clear the record made by the filing of the mortgage pursuant to section 470 by raising the conclusive presumption of payment where there is no filing of a renewal affidavit as therein provided. *Hanson* v. *Blum*, 53 N. D. 526, 207 N. W. 144. It was stated in *Tremaine* v. *Mortimer*, 128 N. Y. 1, 27 N. E. 1060, 1062, in construing a similar statute:

"The effect of the statute is simply that in the cases mentioned, as between the creditors and the mortgagor, the mortgage has no force or operation whatever, and the case is to be treated as if the mortgage had never existed."

Counsel for respondent recognize the rule because they say in their brief,

"If the mortgagee fails to record his mortgage or to file a renewal affidavit, third persons have the right to assume that the property is free from incumbrance, unless they have actual notice to the contrary."

What was said by this court in *Hansen* v. *Daniels, supra,* is very instructive, although probably not controlling, because that case turns on different facts. The court there said:

"It is provided in that section [Comp. Laws Utah 1917, Sec. 474] that when a mortgagee fails to file such renewal affidavit within the time therein specified the mortgage 'shall be void as against the creditors of the person making the same, or against subsequent purchasers or mortgagees in good faith.' Apparently it is appellant's contention that, notwithstanding the fact that the mortgage was thus void as against the bank as a subsequent incumbrancer, the mortgage was, nevertheless, notice of any interest or claim that appellant might have in such sheep. In other words, that the fact that the mortgage was thus filed for record was sufficient to put all subsequent purchasers or incumbrancers upon inquiry to ascertain what interest, if any, the appellant had in the sheep. The statute provides that the mortgage shall be void as against creditors by reason of failure to file the renewal affidavit. It is somewhat inconsistent to argue that a void instrument, declared by statute to be void, is notice to any one of its contents or of what the parties to that void instrument claim with respect to the property described in such void instrument."

The author of 1 Jones Chattel Mortgages and Conditional Sales, Bowers Ed., p. 472, speaking of failure to refile, says:

"A general creditor may take advantage of the omission, though his right accrued previous to such default. This distinction is founded upon the terms of the statute, declaring that the mortgage, unless refiled, 'shall cease to be valid against the creditors of the mortgagor or against subsequent purchasers or mortgagees.' The word subsequent is construed to mean subsequent to the omission to refile. It qualifies the term 'purchasers and mortgagees,' but not the term 'creditors.' Consequently an omission by a creditor of a decedent to refile his chattel mortgage renders its lien ineffectual as against other creditors."

The annotator in 51 A. L. R. 598, states the general rule, which is supported by the weight of authority so far as we have been able to determine, as follows:

"Where the mortgagee does not take possession of the mortgaged property, and fails to extend his lien by filing the renewal affidavit, the mortgage becomes invalid as against the rights of creditors who levy execution or obtain a lien by judicial process after the expiration of the period for refiling, regardless of whether they extended credit before or after the expiration of such period, or knew of the existence of the mortgage."

The following cases support the above quotations from text-writers. In each case the question of whether or not the credit was extended with notice of the filed mortgage seemed to be immaterial. *Lockwood, Englehart & Co.* v. *Crawford*, 29 Kan. 286; *Swiggett* v. *Dodson*, 38 Kan. 702, 17 P. 594; *Geiser Mfg. Co.* v. *Murray*, 84 Kan. 450, 114 P. 1046; *Porter* v. *Parmley*, 52 N. Y. 185, 187, 14 Abb. Prac. (N. S.) 16; *Ely* v. *Carnley*, 19 N. Y. 496; *Thomson* v. *Van Vechten*, 27 N. Y. 568; *In re Watts-Woodward Press, Inc.* (C. C. A.) 181 F. 71, 72; *First National Bank* v. *Magner*, 47 S. D. 80, 195 N. W. 1020; *Lamon* v. *Harada*, 80 Colo. 89, 249 P. 267; *First Nat. Bank* v. *Ludvigsen*, 8 Wyo. 230, 56 P. 994, 57 P. 934, 80 Am. St. Rep. 928; *Griffiths* v. *Thrasher*, 95 Mont. 238, 26 P. (2d) 983; *In re Steffens* (C. C. A.) 31 F. (2d) 660, 63 A. L. R. 589; *Herrick* v. *King*, 19 N. J. Eq. 80; *Richardson* v. *Shelby*, 3 Okl. 68, 41 P. 378; 1 Jones on Mortgages, pp. 467, 504; and 11 C. J. 544.

What was said in the case of *In re Watts-Woodward Press, Inc.*, supra, is significant:

"The language of the statute is perfectly explicit, and under it, unless the mortgage in question were continued within 30 days next preceding June 20, 1909, the expiration of one year from its original filing, it became invalid as against the bankrupt's creditors. It was as if it had never existed. No discrimination is made between creditors founded upon notice or upon the time credit was given, as is made in case of subsequent purchasers or mortgagees."

The decisions from Kansas are particularly in point as our section 474 was taken from Kansas, the only difference in the statutes being with respect to the period of time the

mortgage is valid after filing and the period within which refiling must be made.

Many cases have been cited in the briefs and the reasons stated in them urged as persuasive here, but we shall not take time to analyze or discuss all such cases because they are decisive of questions quite different from the one before us, although somewhat related thereto, as will be seen from the following: *Ruggles* v. *Cannedy*, 127 Cal. 290, 53 P. 911, 59 P. 827, 46 L. R. A. 371, wherein credit was extended after mortgage executed but before filing; *Smith* v. *Allen*, 78 Wash. 135, 138 P. 683, Ann. Cas. 1915D, 300, where mortgage was defective for want of acknowledgment; *Bank of North Dakota* v. *Bean*, 56 N. D. 191, 216 N. W. 575, where mortgage was given for antecedent debt after failure to refile; *Meech* v. *Patchin*, 14 N. Y. 71, a second mortgage given before expiration of refiling period where there was no refiling; *Howard* v. *First Nat. Bank of Hutchison*, 44 Kan. 549, 24 P. 983, 10 L. R. A. 537, mortgage given with notice that first mortgage was not paid or released; *First State Bank* v. *McGregor Land & Live Stock Co.*, 144 Wash. 459, 251 P. 865, 51 A. L. R. 585, second mortgage given with knowledge of first mortgage; *Guaranty State Bank* v. *Lawrence*, 51 S. D. 33, 211 N. W. 801, contest between mortgagees neither taking possession or making levy; *Ullman* v. *Duncan*, 78 Wis. 213, 47 N. W. 266, 9 L. R. A. 683, possession taken by administrator under second mortgage but without legal process; *Burchinell* v. *Gorsline*, 11 Colo. App. 22, 52 P. 413, execution before expiration of time to refile; *Protter* v. *Lovell*, 91 Misc. 417, 155 N. Y. S. 275, proceeding to punish for contempt; *In re Myers* (D. C.) 19 F. (2d) 600; *In re Myers* (C. C. A.) 24 F. (2d) 349; *Karst* v. *Gane*, 136 N. Y. 316, 32 N. E. 1073, original filing of mortgage unseasonably delayed; *Brown* v. *Brabb*, 67 Mich. 17, 34 N. W. 403, 410, 11 Am. St. Rep. 549, delay in filing mortgage not unreasonable; *Union Nat. Bank* v. *Oium*, 3 N. D. 193, 54 N. W. 1034, 44 Am. St. Rep. 533, debt contracted before

making of mortgage, but execution thereon levied after mak-ing and before filing.

It does not follow that because the purpose of section 470, providing for original filing, is as stated in *Brown* v. *Brabb,* supra, "to protect persons dealing upon credit with one who is in possession of personal property as the ostensible owner, upon the reliance of such ownership, from secret convey-ances" that section 474 should be given the same construc-tion and application. Failure to refile has the effect of giv-ing notice that the mortgage is no longer a lien and the property is freed from the mortgage; hence, a creditor who became such during the period of original filing may take advantage of the failure to refile. 11 C. J. 545.

Respondent cites *Carroll* v. *Anderson,* 30 Wyo. 217, 218 P. 1038, as in effect overruling *First Nat. Bank* v. *Ludvigsen,* supra, cited above in support of what we consider the cor-rect rule. A careful reading of the later case will disclose that the facts were quite different from those of the earlier one, and there is no holding announced therein in conflict with the Ludvigsen Case.

Respondent relies on the case of *Pulsipher* v. *Chinn,* 69 Utah 401, 255 P. 439. That was a case of a lease of certain sheep by Schmutz to Chinn. The lease was not filed for record, but Pulsipher, the creditor, had knowledge of the fact that the sheep belonged to Schmutz at the time he ex-tended credit to Chinn. The statute providing for recording of leases is somewhat similar to the statute providing for the filing of chattel mortgages. The reason the Pulsipher Case does not control here is not for lack of analogy between statutes, but because the Pulsipher Case was decided with reference to the original filing of the lease, while this case has to do with failure to refile the chattel mortgage. There the money was loaned to Chinn when the creditor had knowl-edge that Chinn had in his possession sheep belonging to Schmutz. Here credit was extended while appellant had constructive notice that the debtor's property was mort-

gaged to respondent, but by failure to refile, the constructive notice of the original filing of the mortgage had spent its force and by express terms of the statute the mortgage had become void as to creditors. The decision in *Pulsipher* v. *Chinn* is not in conflict with our decision here.

It is next urged by respondent that the life of the mortgage was extended by the commencement of the suit of foreclosure prior to the expiration of the thirty-day period within which to file renewal affidavit, the mortgage then being in full vigor as against appellant. This fact is not shown by any allegation of the complaint in intervention or the demurrer, but by the filing mark on the complaint for foreclosure which shows it to have been ▪ filed February 1, 1933, or eleven days prior to the expiration of the refiling period. In support of this view respondent relies on the case of *Armstrong* v. *Broom,* 5 Utah 176, 13 P. 364, affirmed on appeal, 137 U. S. 266, 11 S. Ct. 73, 34 L. Ed. 648. It was there held that the mortgage was not valid as to creditors after the statutory time of its validity unless within such time proceedings for foreclosure were started. Notice of lis pendens had been filed at the time suit for foreclosure was commenced. It was held that the recording of lis pendens gave constructive notice that the mortgage remained unpaid and the mortgagee need not take possession of the property, that by reason of commencement of suit and filing of notice of lis pendens the property was in effect in the hands of the court for disposition. This case was decided December 1, 1890. The subject-matter of section 474, Comp. Laws Utah 1917, was not then in our statute. This provision was adopted first in R. S. Utah 1898 as section 155. With slight changes with respect to the time element, the statute has remained in force until now and is found in R. S. Utah 1933 as 13-0-2. It would seem that the adoption of this statutory provision declaring a mortgage void as to creditors, unless refiled within the time stated, was intended to change the rule laid down in the case of *Armstrong* v. *Broom,* supra. It is no-

where provided in that statute that the mortgage shall be void unless suit is commenced or notice of lis pendens filed. It was merely stated that such mortgage shall be void as to creditors unless the affidavit there required be filed within a period of ninety days after maturity of the debt, the entire time not to exceed one year.

It is further contended that the appellant had knowledge of the existence of the mortgage as an unpaid obligation at the time its execution was levied. This is not because of any allegation in the complaint or demurrer, but because the complaint in intervention was filed the same day that execution was levied. It may well be that knowledge of the suit to foreclose was obtained and the complaint in intervention filed after levy of the execution even though on the same day. We may not in this proceeding assume that the appellant had such knowledge. Appellant's attachment was levied some time before its complaint in intervention was filed, and it may not be assumed without allegation or evidence that at that time it had knowledge or notice that respondent's mortgage remained unpaid. What the legal effect of such fact would be is not before us to decide, and for that reason we refrain from saying more. The demurrer to the complaint in intervention should have been overruled.

The judgment of the district court dismissing appellant's complaint in intervention is reversed, and the cause remanded to the district court of Weber county, with directions to overrule the demurrer to the complaint in intervention. Costs to appellant.

ELIAS HANSEN, C. J., and EPHRAIM HANSON, MOFFAT, and WOLFE, JJ., concur.